IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DANITA L. HARRIS,                        )
                                         )
                 Plaintiff,              )
                                         )
v.                                       )      CIVIL ACTION NO. 1:24-00002-JB-C
                                         )
RICHARD STRINGER,                        )
                                         )
                 Defendant.              )


## ORDER

This matter is before the Court on Defendant Richard Stringer's Motion to Dismiss the Amended Complaint.  (Doc. 21).  The parties briefed the Motion (Docs. 22, 24, and 25) and it is ripe for resolution.  For the reasons set out below, the Court concludes the Motion is due to be GRANTED IN PART and DENIED IN PART.

I.      BACKGROUND

Plaintiff is the Personal Representative of the Estate of decedent Robert Harris ("Harris"). (Doc. 19).  Harris was a resident of Mobile County, Alabama and a City of Mobile Police officer. (*Id.*).  Harris died on or about June 15, 2022, while incarcerated in the Washington County Jail ("Jail"). (*Id.*).  Plaintiff asserts claims against Defendant Richard Stringer ("Stringer"), who was Sheriff of Washington County, Alabama at all material times.  (*Id.*).  Stringer is sued in his individual capacity.  (*Id.*).  Plaintiff also asserts individual capacity claims against fictitious party "John Doe Detention Officer" ("Doe").  (*Id.*).

Plaintiff alleges Harris was beaten to death by Doe and inmates, at Stringer's encouragement and threatening.  The Amended Complaint (Doc. 19) asserts six (6) causes of

action.  Three (3) are constitutional claims under the 14th Amendment and 42 U.S.C. § 1983:  1. excessive force against Stringer and Doe (First Cause of Action), 2. conditions of confinement against Stringer and Doe (Second Cause of Action), and 3. deliberate indifference to serious medical needs against Stringer and Doe (Third Cause of Action) (collectively "Constitutional Claims").  (Doc. 19).  Plaintiff's other three (3) causes of action are brought under Alabama state law:  1. negligent hiring, training, and supervision, against Stringer (Fourth Cause of Action), 2. wrongful death, against Stringer and Doe (Fifth Cause of Action), and  3. survival, against Stringer and Doe (Sixth Cause of Action) (collectively "State Law Claims").  (*Id.*).

Defendant Stringer moves for dismissal of the Amended Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 22).

## II.    STANDARD

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction.  *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).  The party invoking jurisdiction bears the burden of proof.  *Gilmore v. Day*, 125 F. Supp. 2d 468, 471 (M.D. Ala. 2000) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)).

 In analyzing a Rule 12(b)(6) motion to dismiss, the Court accepts the facts pleaded as true and construes them in a light favorable to the non-moving party.  *Quality Foods De Centro Am., S.A. v. Latin Am. Agribusiness*, 711 F.2d 989, 994-95 (11th Cir. 1983).  All reasonable inferences are drawn in favor of the nonmovant.  *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).  Rule 8(a) requires a "'statement of circumstances, occurrences, and events in support of the claim presented' and . . . not . . . a pleader's 'bare averment that he wants relief and is entitled to it.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007)

(citations omitted).  Although a complaint does not need "detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*  A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Id.*  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

In *Ashcroft v. Iqbal*, the Supreme Court identified "two working principles" which underlie *Twombly*.  556 U.S. 662, 678 (2009).  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  556 U.S. at 678.   "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. [] Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [] But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id.* at 679 (internal citations omitted).

III.    **THE AMENDED COMPLAINT**

Plaintiff alleges the following in her Amended Complaint.  Harris experienced a mental health crisis on June 10, 2022, and attempted to commit suicide during an encounter with law enforcement.  He was arrested, charged with disorderly conduct, criminal mischief, and attempting to elude, then booked into the Jail.

Plaintiff alleges the Jail was "routinely understaffed and overcrowded to such an extent that it adversely impacted its ability to service the detainee population." The Jail consists of a one-person "lock-up" cell, a cell for four trustees, a four-person cell, six eight-person cells, and one eight-person cell for women. At the same time, Plaintiff alleges "[e]ach cell has eight bunks, four on each side of the cell running the length of the wall, and wedged between the bunks on one side is the cell's toilet and sink."

The Jail was constructed to house less than sixty (60) pre-trial detainees and inmates, but typically housed approximately eighty (80). The persons incarcerated at the Jail have "varying criminal histories and individuals charged with or convicted of nonviolent crimes are routinely housed with individuals charged or convicted of violent crimes." Overcrowding makes it difficult to properly classify and segregate inmates according to the seriousness of charges, security risks, or needs. The Jail does not have a "medical cell" for inmates or detainees with physical or mental illness or who are suicidal. There is no policy or training addressing suicide-risk identification, observation, or management.

The Jail does not provide outdoor physical exercise, fresh air, or sunlight more than once a week. It does not have designated indoor exercise facilities. Cell doors remain unlocked. Inmates are able to move to a dayroom only through a small hallway, and "these spaces are not large enough for the inmates to move about or engage in exercise."

The Jail has inadequate natural lighting, ventilation, and temperature control. Most inmates remain idle in cells, resulting in deterioration of mental and physical health. These conditions contribute to heightened inmate and detainee violence, which Jail staff does not attempt to address.

The Jail staff is inadequate and untrained.  Supervision and many other functions are often delegated to untrained inmate trustees, including the entrustment of cell keys.  The Jail has no criteria, policy, or procedure for trustees.  Violent and non-violent offenders have been designated trustees.

There is typically one or no jailer on duty to patrol areas occupied by detainees and inmates.  Grossly inadequate staffing threatens the safety and security of inmates and detainees.  Closed circuit monitors are often inoperable, such that a guard must patrol four corridors occupied by inmates and detainees.  Guards cannot observe all cells at once, and cannot see into dimly lit cells, particularly at night.  Guards patrol cells irregularly or not at all.  There are regular and frequent fights in cells during which inmates are stabbed or otherwise attacked.

The Jail does not afford detainees or inmates a means of emergency communication.  They must yell through a dayroom wall to summon guards, who routinely ignore or delay responding to requests.  Delayed responses have resulted in unchecked fights, deaths and medical emergencies.

Plaintiff alleges "numerous" incidents of serious security breaches and medical crises at the Jail that required attention.  Plaintiff alleges three (3) specific instances.  First, a Jail inmate died of a heart attack in 2018, notwithstanding attempts by other inmates to obtain medical aid for him, because Jail officials did not believe the inmate was having a heart attack and refused to call an ambulance.  Second, in 2016, a pre-trial detainee died after Jail officials delayed obtaining medical treatment while determining whether the detainee had insurance or other payment arrangements.  Third, in 2013, an inmate sustained kidney damage and entered a diabetic coma

due to the Jail's lack of medical personnel and the use of medical bonds.  None of these instances involved violence against inmates or detainees.

Plaintiff alleges Defendants failed or refused to take any measures to correct known deficiencies.  No policy or procedural changes were implemented after repeated medical and other hazard crises.

Inmates and detainees are not classified upon admitting to the Jail.  The Jail does not identify special needs or separate inmates or detainees who pose a risk to themselves or others. Suicidal and mentally ill inmates and detainees are housed with others.  The Jail does not have a cell designed to house suicidal or mentally ill inmates or detainees. Jail staff is not trained to recognize or respond to physical or mental health problems.  Inmates and detainees have suffered physical and psychological harm as a result.

The Jail does not provide prompt medical care to address serious medical needs.  It does not employ or utilize medical professionals, conduct medical sick call, or provide medical care in any form.  The Jail has no system to identify or treat medical needs.

The Jail requires inmates and detainees to sign a waiver to go to the hospital.  In medical emergencies, Jail staff attempts to have inmates and detainees sign a "medical bond" that allows temporary release to seek medical treatment. When an inmate or detainee is incapable of executing a medical bond, the inmate's family is requested to take the inmate for treatment. Otherwise, the Jail transports to the hospital only if the inmate or detainee has Medicaid or is otherwise insured.

Plaintiff alleges, upon information and belief, Defendants have been aware of the conditions of confinement and treatment of inmates and detainees as a result of official

inspection reports, complaints, newspaper articles, the conspicuousness of such conditions, and multiple lawsuits filed against Defendant Stringer and his staff.  There are no allegations of specific reports or complaints.

During Harris's confinement at the Jail, Stringer and his staff knew or should have known Harris was experiencing a mental health crisis.  Harris was not screened for suicidal ideations or mental health concerns upon his booking into the Jail or at any time thereafter. Harris's family attempted to have him evaluated at a mental health facility, but Jail staff did not permit it.  Harris was not segregated from the general population.  He was housed with detainees and inmates charged with or convicted of violent and nonviolent crimes.

Sometime between Harris's booking on June 10, 2022 and his death on June 15, 2022, Doe strapped Harris to a chair where Doe and several inmates and detainees beat Harris.  Stringer has a pattern and practice of encouraging violence against inmates and detainees by guards and other inmates/detainees.   Stringer encourages and intimidates inmates and detainees to participate in such violence by telling them that they will be next if they refuse.  There are no specific allegations of prior violence or threats by Stringer.

In addition to allegations of practice and encouragement of violence against inmates generally, Plaintiff specifically alleges Stringer participated in the beating of Harris made the subject of suit.  Plaintiff specifically alleges Stringer "encouraged Defendant Doe to strap [Harris] to a chair, beat him, and allow other inmates/detainees to do the same."  Plaintiff also alleges Stinger "encouraged the inmates/detainees to beat Plaintiff by suggesting they would be next if they did not do so."

Plaintiff alleges Harris was in severe medical distress following his beating by Doe and other inmates and detainees.  Harris did not receive prompt medical attention.  Harris was found dead in his cell on June 15, 2022.  Stringer immediately reported that Harris died of "underlying circumstances."  He also reported Harris was on 24-hour watch the entire time he was in the Jail and asserted nothing physical had happened to Harris.

Harris's autopsy report indicated he suffered from blunt force trauma of his head, neck, torso, and extremities.  The report noted hemorrhage of the right and left temporal muscles, acute contusion of the frontal lobe of the right cerebral hemisphere, linear abrasions of the neck, focal hemorrhage of the left sternocleidomastoid muscle, abrasions to the torso and lower extremities, and contusions to the upper extremities.  Harris's cause of death was determined to be a pulmonary thromboembolism.

## IV.    DISCUSSION

### A.  CONSTITUTIONAL CLAIMS

Stringer argues Plaintiff's Constitutional Claims should be dismissed because they are not plausibly alleged and he is entitled to qualified immunity.  (Doc. 22).  A "government official may . . . seek to have [a section 1983] complaint dismissed on qualified immunity grounds prior to discovery, based solely on the allegations in the pleadings."  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263, n.6 (11th Cir. 2004).

To establish entitlement to qualified immunity, Stinger first must demonstrate he was acting within his discretionary authority when he performed the acts of which the Plaintiff complains.  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir. 2004).  For

the reasons set out in Stringer's briefing, and given the dearth of argument in Plaintiff's opposition, the Court concludes Stringer was acting within his discretion authority.

Once discretionary authority is demonstrated, the burden shifts to Plaintiff to establish Stinger is not entitled to qualified immunity.  *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir.2003).  To overcome qualified immunity, Plaintiff must show that Stringer violated a constitutional right, and that such right was clearly established.  *See Scott v. Miami Dade Cnty.*, 2023 U.S. App. LEXIS 16204, *7 (11th Cir. June 27, 2023) (citing *Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004)).

Stringer contends Plaintiff has failed to plausibly allege a constitutional violation.  As a "supervisory official," Stringer is liable only for his own misconduct.  "It is well established in [the Eleventh] Circuit that 'supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.'"  *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1297 (11th Cir. 2023) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999))).  Furthermore, the "standard by which a supervisor is held liable in [his or her] individual capacity for the actions of a subordinate is extremely rigorous."  *Piazza v. Jefferson Cnty., Alabama*, 923 F.3d 947, 957 (11th Cir. 2019).

To establish supervisory liability, a plaintiff must demonstrate either personal participation or a "causal connection."  More specifically, the Eleventh Circuit has explained "'supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.'"  *Cottone*, 326 F.3d at 1360

9

(citing *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)).  A causal connection, in turn, may be established by demonstrating that "(1) the supervisor had notice of a history of widespread abuse, which he neglected to correct; (2) the supervisor implemented a custom or policy that resulted in deliberate indifference to constitutional rights; or (3) the facts support an 'inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'"  *Evans v. St. Lucie Cnty. Jail*, 448 F. App'x 971, 974, 975 (11th Cir. 2011) (quoting *Cottone*, 326 F.3d at 1360)).

### 1.  Excessive Force

Stringer argues Plaintiff has not plausibly alleged supervisory liability under § 1983 for excessive force.  Plaintiff responds that she has plausibly alleged his personal participation in Harris's beating.  Plaintiff also argues she has plausibly alleged a causal connection because her allegations support an inference that Stringer directed Doe to conduct the beating.  (*See* Doc. 24, PageID.159 – 162).  Plaintiff relies on her allegations that Stringer encouraged Doe to strap Harris to a chair, beat him, and allow other inmates and detainees to do the same.  Plaintiff also alleges Stringer himself threatened inmates and detainees to beat Harris, and she alleges the details of his threat, *i.e.*, Stringer told them they would be next if they did not participate in Harris's beating.

Stringer characterizes the Amended Complaint as providing bare and conclusory allegations that he "sanctioned and encouraged" Harris's beating, and as such are insufficient to state a plausible cause of action for supervisory liability under § 1983.  Stringer mischaracterizes Plaintiff's allegations, and he relies on inapposite caselaw.  Plaintiff cites *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003), but *Gonzalez* is materially distinguishable.  The supervisory defendants in *Gonzales* directed their subordinates to execute a "valid" warrant and engage in

"lawful" conduct.  325 F.3d at 1236.  The plaintiffs failed to "allege any facts to suggest that the [supervisory] defendants did anything more than personally direct and cause the execution of *valid"* warrants.  325 F.3d at 1235 (emphasis added).  In *Gonzales*, the plaintiffs failed to allege the supervisory defendants directed their subordinates to engage in the claimed unconstitutional conduct.  *Id.* ("Plaintiffs do not allege that these [supervisory] defendants directed the agents on the scene to spray the house with gas, break down the door with a battering ram, point guns at the occupants, or damage property.").  The Court in *Gonzales* concluded, "the reasonable inference which we must draw from the factual allegations is that the supervisory defendants ordered the execution of *valid* . . . warrants with the expectation that the agents on the scene would execute them in a *lawful manner*." *Id*. at 1236 (emphasis added).

Unlike the plaintiff in *Gonzalez*, Plaintiff here alleges Stringer encouraged and sanctioned him to perform the claimed unconstitutional conduct, and specifically that he did so by directing Doe "to strap [Harris] to a chair, beat him, and allow other inmates/detainees to do the same." Plaintiff alleges Stringer personally threatened inmates and detainees to beat Harris, and that his threat was "suggesting they would be next if they did not do so."  (Doc. 19 at paragraphs 60, 66, 77).  These are not conclusory allegations bereft of detailed factual support.[1]

The Court finds Plaintiff's allegations to be more analogous to those in *Walton for Estate of Smith v. Fla. Dep't of Corrections*, 2019 U.S. Dist. LEXIS 81007 (M.D. Fla. May 14, 2019).  The

---

[1] For the same reasons, Stringer misplaces reliance on *Barr v. Gee*, 437 F. App'x 865 (11th Cir. Aug. 16, 2011), *Phillips v. May*, 838 F. App'x 445 (11th Cir. 2020), and *Thompson v. Carani*, 2007 U.S. Dist. LEXIS 58642 (S.D. Ga. Aug. 10, 2007).  Plaintiff's allegations are not unsupported conclusory allegations of mere "condoning" or "encouraging." Rather, Plaintiff alleges Stringer gave specific instructions to Doe to perform the particular unconstitutional acts made the basis of her action, and personally threated inmates to participate by suggesting they would receive the same treatment as Harris if they failed to do so.

Court in *Walton* found plaintiff's allegations plausibly established supervisory liability based on personal participation.  The plaintiff in *Walton* alleged the supervisory defendant was personally complicit in the particular beating at issue.  In addition to general allegations of past practices and patterns, the plaintiff alleged the supervisory defendant agreed to a plan for the decedent "to be taught a lesson," which suggested complicity in the particular beating made the basis of the complaint.  *Watson for Estate of Smith*, 2019 U.S. Dist. LEXIS 81007 at *19.  Plaintiff also alleged the supervisory defendant ordered a cover up, which likewise demonstrated personal participation in the subject incident rather than a "pattern of indifference to past instances of excessive use of force." *Id*. at 21.  The court in *Walton* found a jury could plausibly conclude "personal participation in the relevant incidents." *Id*.[2]   This Court, likewise, finds a jury could plausibly conclude Stringer's "personal participation in the relevant incidents" here.

The Court also finds Plaintiff states a plausible claim of supervisory liability based on a "causal connection."  These same allegations support an "inference that [Stinger] directed [Doe] to act unlawfully." *Evans v. St. Lucie Cnty. Jail*, 448 F. App'x 971, 974 - 975 (11th Cir. 2011).  *See also Keating v. City of Miami*, 598 F.3d 753, 764 (11th Cir. 2010).

In sum, the Court concludes Plaintiff has stated a plausible claim of supervisory liability for excessive force based on her allegations of Stringer's personal participation in Harris's beating and her allegations of a causal connection between the beating and Stringer's direction of Doe.[3]

---

[2] Plaintiff argues Stringer also engaged in a cover up based on allegations that Stringer claimed Harris was on 24-hour watch throughout his incarceration and denied that something physical happened to Harris, which is "directly at odds" with Harris' autopsy report.  (Doc. 19 at paragraphs 52 and 53 (PageID.104)).

[3] For reasons fully set out below in its analysis of Plaintiff's deliberate indifference and conditions of confinement claims, the Court concludes Plaintiff has not plausibly alleged a causal connection between Harris's beating and a history of widespread abuse or the implementation of a custom or policy.

### 2. Deliberate Indifference

Stringer argues Plaintiff has not plausibly alleged supervisory liability under § 1983 for deliberate indifference.  Plaintiff disagrees, contending specifically she has plausibly alleged a causal connection between Stringer's "policy regarding external medical care" and deliberate indifference to Harris's serious mental health and medical needs.  (Doc. 24 at PageID.163).[4]

First, the Court notes the recent Eleventh Circuit opinion in *Wade v. McDade,* 106 F.4th 1261 (11th Cir. 2024).  In *Wade*, the Court resolved a question that "has bedeviled panels of [the] Court for the better part of the last three decades: 'What is the standard for establishing liability on an Eighth Amendment deliberate-indifference claim?'"  *Wade*, 106 F.4th at 1253.  The Court provided the following answer:

1. First, of course, the plaintiff must demonstrate, as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.'"  [*Farmer v. Brennan*, 511 U.S. 825,] 834 [(1994)] (citations omitted).

2. Second, the plaintiff must demonstrate that the defendant acted with "subjective recklessness as used in the criminal law," *id.* at 839, and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk." *Id.* at 844-45.

*Wade*, 106 F.4th at 1262.

In terms of supervisory liability, a causal connection can be proved by demonstrating "that the supervisor's 'policy or custom resulted in deliberate indifference to constitutional rights.'"  *Henley v. Payne*, 945 F.3d 1320, 1331 (11th Cir. 2019) (quoting *Piazza*, 923 F.3d at

---

[4] Plaintiff does not argue personal participation in his brief on his deliberate indifference claim.

957)).  However, a "plaintiff can only allege the existence of a policy or custom by 'point[ing] to multiple incidents or multiple reports of prior misconduct by a particular employee.'"  *Id.* "Normally random acts or isolated incidents are insufficient to establish a custom or policy." *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986).

Further, a "causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Christmas v. Harris Cnty.*, 51 F.4th 1348, 1355 (11th Cir. 2022).  However, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration, rather than isolated occurrences*." *Christmas*, 51 F.4th at 1355 (emphasis added) (citing *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1048 (11th Cir. 2014), and *Clark v. Evans*, 840 F.2d 876, 885 (11th Cir. 1988)).  *See also, Holloman*, 370 F.3d at 1294 ("for constitutional violations to be sufficiently 'widespread' for a governmental supervisor to be held liable, they need occur with frequency."), and *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1299 (11th Cir. 2023) ("Demonstrating a policy or custom requires showing a persistent and wide-spread practice.") (quoting *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007) (quoting *Depew*, 787 F.2d at 1499)).  In *Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015), the court addressed plaintiff's allegations of four shootings that occurred one year prior to the subject shooting.  Even assuming the four prior shootings were unconstitutional uses of excessive force, the court concluded they were not "obvious, flagrant, rampant and of continued duration" and did not establish a "causal connection between actions of the supervising official and the alleged constitutional deprivation."  126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015) (citing *Hartley*, 193 F.3d at 1269).

Incidents that are remote in time and factually distinguishable from the alleged constitutional violation will not support a claim of widespread abuse. *See Lamego v. Mascara*, 2021 U.S. Dist. LEXIS 29939 (S.D. Fla. Jan. 7, 2021) (four (4) prior deaths over a twenty-two year period, one of which being within three (3) years of the subject death, were too remote to demonstrate a widespread practice or pattern of abuse) (relying on *Hawk v. Klaetsch*, 522 F. App'x 733, 735 (11th Cir. 2013) (three incidents over approximately five years did not demonstrated "frequent, widespread, or rampant abuse"); *Whittier v. City of Sunrise*, 395 F. App'x 648, 650 (11th Cir. 2010) (three violations do not demonstrate a custom); *Wakefield v. City of Pembroke Pines*, 269 F. App'x 936, 940 (11th Cir. 2008) (two incidents over approximately thirteen months did not constitute a custom). Conclusory allegations are insufficient. In *Hays v. Curry*, the court found plaintiff did not establish widespread abuse because he failed to allege "specific facts, dates, frequency, or number of reports, complaints, and/or lawsuits" of prior occurrences. 2016 U.S. Dist. LEXIS 149447, *11 (N.D. Ala. Oct. 28, 2016) (finding five prior incidents over a ten-year period insufficient to "support . . . an allegation of widespread practice.")

Here, Plaintiff makes conclusory allegations of "numerous incidents" of a variety of medical deprivations at the Jail. She alleges the Jail does not have a medical cell and does not provide medical services, and that Jail staff are not trained to respond to medical problems. The three prior incidents she cites in her Amended Complaint are too few, remote, isolated, and distinguishable to plausibly establish a "causal connection" based on Stringer's notice of a history of widespread abuse or on his implementation of a custom or policy that resulted in deliberate indifference to Harris's constitutional rights.

The Court finds this case analogous to *Letson v. Mitchell*, 2015 U.S. Dist. LEXIS 39885 (N.D. Ala. March 30, 1985).  The plaintiff in *Letson* alleged supervisory defendants,

> were aware of the need for appropriate policies, procedures, and training regarding the identification and handling of inmates addicted to alcohol and suffering from or likely to suffer from withdrawal and failed to develop adequate policies and procedures or to train jail staff in this respect. . . . In fact, according to the plaintiff, the defendants established a custom or policy of denying or delaying medical treatment for serious health conditions, including alcohol withdrawal, as well as a custom or policy of using outside medical providers and emergency medical resources that was so restrictive inmates were regularly denied prompt medical care for serious health conditions, including alcohol withdrawal.

*Letson*, 2015 U.S. Dist. LEXIS 39885, at *7 - 8.  The plaintiff in *Letson* also cited "two prior lawsuits alleging deliberate indifference to the serious medical needs of detainees" to support his general allegations of a custom and policy.  *Id.* at 24.  However, the court concluded these allegations were isolated instances, and did not sufficiently allege "a persistent and wide-spread practice." Id. at 26 (quoting *Goebert*, 510 F.3d at 1332)).  The court found plaintiff's allegations insufficient to plausibly allege supervisory liability.  *Id.* at 25 (citing *Bell v. Shelby County, Alabama*, 2013 U.S. Dist. LEXIS 145099, at *7 - 8 (N.D. Ala. Oct.8, 2013) (at Rule 12(b)(6) stage, holding three isolated incidents of alleged inadequate medical care occurring in 2004, 2007, and 2011, respectively, did not constitute persistent and widespread practice, especially given plaintiff did not allege any of these incidents were found to be constitutional violations); and *Clark v. Evans*, 840 F. 2d 876, 885 (11th Cir. 1988) (at Rule 12(b)(6) stage, finding four incidents where employee of department of corrections failed to process commitment orders in five years would not have been sufficient to put supervisory official on notice of need for improved training or supervision)).

Plaintiff has not alleged a "series of constitutional violations from which deliberate indifference [can] be inferred."  *Craig v. Floyd County*, 643 F.3d 1306, 1312 (11th Cir. 2011).

Plaintiff has failed to state a plausible claim of supervisory liability, based on a causal connection, against Stringer for deliberate indifference to serious medical needs.

### 3. Conditions of Confinement

Stringer argues he is entitled to dismissal of Plaintiff's claim for conditions of confinement. Plaintiff responds that she has sufficiently alleged Stringer's personal participation based on Stringer's denial of mental health treatment, his failure to segregate the inmate population, and his role in Harris's beating.[5]

"Although the Constitution does not and the court cannot dictate the general conditions that should exist in jails and prisons, the Constitution does require conditions of confinement imposed by states to meet certain minimum standards." *Hamm v. DeKalb County*, 774 F.2d 1567, 1571 (11th Cir. 1985) (citing *Jones v. Diamond*, 636 F.2d 1364, 1368 (5th Cir.) (en banc), cert. granted, 452 U.S. 959, 101 S. Ct. 3106, 69 L. Ed. 2d 970, cert. dismissed, 453 U.S. 950, 102 S. Ct. 27, 69 L. Ed. 2d 1033 (1981)).  The Due Process Clause of the Fourteenth Amendment governs the conditions of confinement imposed on pre-trial detainees, such as Harris.  *Hamm*, 774 F.2d at 1572 ("Conditions of confinement imposed prior to conviction are limited . . . by the due process clause of the fourteenth amendment.").  Under the Fourteenth Amendment, "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Piazza*, 923 F.3d at 952 (explaining "[t]hat pretrial detainees fall within the Fourteenth Amendment's ambit dates to the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)," and that "the 'proper inquiry' when 'evaluating the

---

[5] Plaintiff does not argue in her brief a causal connection to establish supervisory liability on her claim for unconstitutional conditions of confinement.  For the reasons set out in the Court's analysis of Plaintiff's deliberate indifference claim, *supra*, the Court would conclude that such an argument would fail.

constitutionality of conditions or restrictions of pretrial detention' is 'whether those conditions amount to punishment of the detainee.' *Id.* at 535.").

In his Motion, Stringer argues Plaintiff has failed to demonstrate deliberate indifference to an unconstitutional condition of confinement, as she has not established a pattern of unconstitutional conduct.  Stringer contends the three prior medical instances set out in the Amended Complaint do not establish a pattern of unconstitutional violations.  Plaintiff, however, does not argue a causal connection in support of her condition of confinement claim.  Rather, she argues she has plausibly alleged Stringer's "personal participation."  (Doc. 24 at PageID.165). Stringer replies that Plaintiff has failed to establish personal participation as well.

As set out above, the Court has found Plaintiff has plausibly alleged Stringer's personal participation, at least at this stage of the proceedings, with respect to Harris's beating.  However, the Court concludes Plaintiff has failed to plausibly allege Stringer's personal participation in the other conditions of confinement claimed in the Amended Complaint.  Therefore, the Court concludes that Stringer's Motion to Dismiss Plaintiff's claim for unconstitutional conditions of confinement is due to be denied based on, and to the extent of Plaintiff's allegations of Stringer's personal participation in Harris's beating.

### B.  STATE LAW CLAIMS

Stringer moves to dismiss Plaintiff's State Law Claims based on absolute immunity afforded by Article I, § 14 of the Alabama Constitution, which states the "State of Alabama shall never be made a defendant in any court of law or equity."  Alabama Sheriffs are constitutional executive officers of the State.  *See* Alabama Constitution, Art. V. § 112 (the "executive department shall consist of a governor, lieutenant governor, ... and a sheriff for each county.").

As such, a suit against an Alabama Sheriff is in essence a suit against the state and barred by the Alabama Constitution.  *See Parker v. Amerson*, 519 So. 2d 442, 446 (Ala. 1987) ("This Court has specifically held that a suit against a sheriff is 'essentially a suit against the state' and thus 'not maintainable.' *Montiel v. Holcombe*, 240 Ala. 352, 199 So. 245 (1940).").  In *Ex parte Sumter County*, the Alabama Supreme Court explained:

> [S]heriffs and deputy sheriffs are executive officers of this State, pursuant to the Ala. Const. 1901, Art. V, § 112. *Parker, 519 So.2d at* 443. Moreover, **claims against sheriffs and deputy sheriffs are 'barred by the absolute immunity of Article I, § 14, of the Alabama Constitution of 1901**,' *Coleman v. City of Dothan*, 598 So. 2d 873, 875 (Ala. 1992) (quoting *White v. Birchfield*, 582 So. 2d 1085, 1088 (Ala. 1991)), when the sheriffs or the deputies were 'acting within the line and scope of their employment.' *Ex parte Purvis*, 689 So. 2d 794, 795 (Ala. 1996).

953 So.2d 1235, 1239 (Ala. 2006) (emphasis added).[6]

Plaintiff bases her opposition to dismissal of her State Law Claims on inapposite law. According to Plaintiff, Stringer is not entitled to absolute immunity under Alabama law because she alleges he acted "willfully, maliciously, in bad faith, and beyond his authority."  She relies on *Ex parte Kennedy*, 992 So.2d 1276 (Ala. 2008).  However, as Stringer correctly sets out in his Reply Brief, Plaintiff "has confused the doctrine of state agent immunity under Alabama law, which protects state officers from certain claims, with absolute immunity afforded to constitutional officers under Alabama's Constitution," such as Stringer.

---

[6] There are limited exceptions to absolute immunity under Alabama law for claims seeking injunctive or declaratory relief.  *See Parker*, 519 So.2d at 445 – 446 (listing exceptions as actions "(1) to compel state officials to perform their legal duties; (2) to compel state officials to perform ministerial acts; (3) to enjoin state officials from enforcing unconstitutional laws; (4) to enjoin state officials from acting in bad faith, fraudulently, beyond their authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act.").  None of these exceptions apply here, as Plaintiff expressly and exclusively seeks money damages.

In *Ex Parte Cranman*, the Alabama Supreme Court addressed immunity available to certain state officials who had not acted "willfully, maliciously, fraudulently, in bad faith, beyond [their] authority, or under a mistaken interpretation of the law." 792 So. 2d 392, 405 (Ala. 2000). However, the Court was careful to explain it did not deal "with the absolute immunity of witnesses, judges, prosecutors, and legislators, nor [did it] overrule *Ex parte Purvis*, 689 So. 2d 794 (Ala.1996)." *Id.  In Ex parte Purvis, t*he Court held constitutional officers, such as sheriffs, are immune from suit under § 14 of the Alabama Constitution notwithstanding allegations they acted "willfully, maliciously, illegally, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law." 689 So. 2d 794, 795-96 (Ala. 1996).  In *Ex parte Davis*, the Alabama Supreme Court reiterated:

> [O]ur cases distinguish between the standards applied to those state agents or employees whose positions exist by virtue of legislative pronouncement and those who serve as the constitutional officers of this State. We have held that State-agent immunity may bar an action against a state agent or employee under the principles announced in *Ex parte Cranman*, 792 So. 2d 392 (Ala.2000). S*ee Ex parte Butts*, 775 So. 2d 173 (Ala.2000) (adopting, by majority, the *Cranman* restatement of the rule governing State-agent immunity). However, **this Court has consistently held that a claim for monetary damages made against a constitutional officer in the officer's individual capacity is barred by State immunity whenever the acts that are the basis of the alleged liability were performed within the course and scope of the officer's employment.**

930 So. 2d 497, 500 – 501 (Ala. 2005) (emphasis added).

Stringer is an Alabama sheriff, and therefore a constitutional officer who is immune from suit for money damages based on alleged acts performed within the course and scope of his

employment.  Plaintiff's State Law Claims against Stringer are expressly such claims and are due

to be dismissed.[7]

### C.  FICTICIOUS PARTY CLAIM

Stringer argues Plaintiff's claims against fictitious party "John Doe Detention Officer" are

due to be dismissed because, "[a]s a general matter, fictitious party pleading is not permitted in

federal court."  *Vielma v. Gruler*, 808 F. App'x 872, 880 (11th Cir. 2015) (citing *Richardson v.*

*Johnson*, 598 F.3d 734, 738 (11th Cir. 2010)).   In the context of fictitiously named jail officers,

Stringer notes cases that turn on whether the complaint provides enough detail to identify the

officer and effect service.  *See, e.g., Smith v. Comcast Corp.*, 786 F. App'x 935, 940 (11th Cir. 2019),

*McCall v. Shelby County Jail*, 2024 U.S. Dist. LEXIS (N.D. Ala. Jan. 8, 2024).  Stringer argues the

instant Amended Complaint does not provide any physical detail of Doe, such as his race or height,

or any other identifying descriptions.

Plaintiff acknowledges the general rule prohibiting fictitious party pleading, but argues it

is not absolute and that the Alabama state law procedures for fictitious party practice and

relation back are a proper part of the analysis.[8]  Plaintiff relies heavily on *Mann v. Darden*, 630 F.

Supp. 2d 1305 (M.D. Ala. 2009), in which the court stated, "the use of fictitious names in federal-

---

[7] Of note, the application of sovereign immunity for constitutional officers has, in the recent past, been handled with differing results in light of the Alabama Supreme Court's decision in *Ex Parte Pinkard*, 373 So. 3d 192 (Ala. 2022) (held that "nothing in the text of § 14 [of the Alabama Constitution] prohibits courts from hearing a claim against an individual State employee if the claim does not name or seek relief from the State."). *See e.g. Reynolds v. Calhoun*, 2023 WL 1954372, at *4 (M.D. Ala. Jan. 13, 2023) ("Importantly, the cases analyzing official-capacity State immunity for statutory officers, including *Pinkard*, do not include claims against any of the nine executive officers listed in Article V, § 112 of the Alabama Constitution [...]") *Cf. McKenzie v. Cleveland*, 2023 WL 3312539, *7 (N.D. Ala. May 8, 2023) (permitting state law claims against sheriff's deputies in their individual capacities to proceed when the claims were made against them in their individual capacity"). However, neither party has raised *Pinkard*.

[8] Plaintiff argues Stringer does not have standing to seek dismissal on behalf of Doe.  However, for the reasons stated in Stringer's Reply Brief (Doc. 25), the Court concludes Stringer does have standing and that he has properly raised this argument in his Motion to Dismiss.

court pleadings, while not ideal, is both commonplace and sensible." 630 F. Supp. 2d at 1313. The court reasoned that a "blanket rule" prohibiting fictitious pleading "would make little sense as a matter of procedure and raise serious questions of fairness." However, the court also explained that concerns of fairness and procedural rules apply equally to defendants, and that courts must examine a plaintiff's diligence in ascertaining the actual identity of fictitiously named parties:

> This is not to suggest, of course, that fictitious-party pleading, invoked in the name of prudence and fairness to plaintiffs, is to be employed in a manner that flouts procedural rules designed to insure fairness to defendants; the point, simply, is that a reasonable balance must be struck between the two. **With that in mind, the court now turns to whether, under the circumstances, [plaintiff's] substitution of [the actual officers] for their fictitious alter egos was timely under the relevant Alabama rules regarding relation back of amendments.**

*Id.* (emphasis added).

*Mann* involved a tasing incident, in which the plaintiff did not know the identity of the tasing officers. The plaintiff described the officers based on conduct, filed a motion for early discovery "for the purpose of uncovering the actual names of the officers," and subpoenaed police records five months after filing suit. *Id.* at 1314. Nevertheless, the court in *Mann* concluded the plaintiff had not exercised due diligence to discover the identities of the fictitiously named officers for purposes of relation back under Alabama procedural rules.

In this case, Plaintiff's claimed excuse for failing to discover Doe's true identity is even less substantial than the efforts by plaintiff in *Mann* which the court found insufficient. Here, Plaintiff simply argues, without support, she was unable to identify Doe's actual identity "because neither the Defendants nor the investigative agencies involved would turn over public documents

requested prior to filing suit[]."  Plaintiff offers no evidence of what "request[s]" she made, when they were made, or any other efforts she undertook to discovery Doe's identity.

The Court concludes the Motion to Dismiss the State Law Claims is due to granted.

## CONCLUSION

Upon due consideration of all material filings and as more specifically stated above, the Court concludes and orders as follows:

1. Defendant's Motion to Dismiss is DENIED as to Plaintiff's First Cause of Action for excessive force, based on and to the extent of Plaintiff's allegations of Defendant Stringer's personal participation in Harris's beating and a causal connection between the beating and Stringer's direction of Doe;

2. Defendant's Motion to Dismiss is GRANTED as to Plaintiff's Second Cause of Action for deliberate indifference;

3. Defendant's Motion to Dismiss is DENIED as to Plaintiff's Third Cause of Action for unconstitutional conditions of confinement, based on and to the extent of Plaintiff's allegations of Defendant Stringer's personal participation in Harris's beating;

4. Defendant's Motion to Dismiss the State Law Claims, the Fourth, Fifth and Sixth Causes of Action, is GRANTED;

5. Defendant's Motion to Dismiss all claims against fictitious party John Doe Detention Officer is GRANTED.

DONE and ORDERED this 17th day of September, 2024.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE